We'll proceed with our day calendar today. The first case is Gupta v. United States of America. May it please the court, Gary Neftalis for the appellant Rajat Gupta. In this case, our position is that Mr. Gupta was convicted based upon a jury instruction that is indisputably, in our judgment, invalid after this court's opinion in the United States against Newman. And in addition, as a result of this invalid jury instruction, Mr. Gupta suffered substantial prejudice in the case which I will bring out. This panel is familiar with the Newman case, obviously, which changed what had been the rules, we suggest, on where that proof of a personal relationship without more was insufficient. Well, the relationship of Newman to the view of the type of relationship that has to be shown is before the Supreme Court. Salomon and, indeed, Judge Rakoff's opinion, sitting out in the Ninth Circuit, seems to disagree with Newman. Shouldn't we wait to see what Salomon has to say? It may very well be that the charge was consistent with Salomon. Well, obviously, it's up to this court to determine. Well, I'm asking your view, Mr. Neftalis, you're a well-known criminal defense lawyer. Is your view that we should wait for the Supreme Court? Don't you think the Supreme Court will decide this issue? Well, the answer is I'm never one who can... You've thought about this. I know you've thought about this because you knew someone was going to ask you this. Now, tell me, yes or no, do you think the Supreme Court will resolve the issue? I'm not sure because I think the case, the case in the case, the Salomon case is a very, it could be decided on extremely narrow grounds because that's the gift issue between the relatives, which is, in our case, in no way, shape, or form was either charged or argued or instructed on the gift issue. So the answer is yes, it may well, depending on how broadly this... There's no real showing of any kind of direct benefit between the two, right? Notwithstanding the fact that Gupta was invested in and had received substantial sums of money from Mr. Roger Rotman. I mean, he was invested in galleon funds, and galleon funds had invested in another fund from which Roger Rotman himself had drawn the money to make the Goldman investments in which he netted $33 million on the inside tip that Mr. Gupta gave him. So doesn't that seem like an understanding that if he did something good for Mr. Roger Rotman, that he would himself perhaps benefit? Well, I say two things to that. Number one, your Honor's question goes really to the sufficiency, to sufficiency of the evidence, and we would say, number, and it doesn't go to the prime issue here, which is instructional error. The here is the case was tried, argued, and charged on an incorrect theory. That's the... And secondly, your Honor, as Newman pointed out, when that... The temporal factor is important. The government had argued, oh gee, there was a quid pro quo because he had given in the past investment advice or career advice to the tipper in the Newman case. This court said too late, too early. It didn't... There was no... That happened a year ago. The fact that at one time they had business relationships really doesn't go to the issue of the fact that it was neither argued nor proved nor charged that there was any exchange here or quid pro quo. Let me, let me... Gupta was chairman of Galleon International and had a 15% stake in that, and there was evidence that after Gupta passed information to Rajaratnam, Rajaratnam advised the investment person at Galleon International to stay away from Solomon long term because it was going to report fourth quarter losses rather than profits? Well, I would suggest no because the evidence, which I think was reasonably indisputed at trial, is that yes, there was proof in the spring of 2008 about the possibility, and indeed there's evidence, and your Honor knows this because your Honor wrote the initial panel decision about that, but the undisputed evidence was it never happened. That the... That what never happened? That he never became the chairman of Galleon International. He never got a 15% stake, and what is critical here is that he never received a dime in connection with anything in the fall of 2008, and to take you back, this is an instructional error case. Let me tell you all the things that are wrong with the instruction in this case. Can I ask you about procedural default though too, and that is the government points out in its brief at page 40 that this charge problem was raised at least four times by you below. How's that caused then for not raising it on direct appeal? Look, I say two things. One, Judge Droney, that first of all, one always argues to do as well as you can and not necessarily get the full extent of what the court can do. Think of an example. Judges are all over the place in how they charge reasonable doubt, right? I mean, some people put this in it, some people put that in it. Sure, a certain charge which I wouldn't like as a defense lawyer on reasonable doubt, it would be acceptable, but it doesn't mean I don't fight to get a better charge. Secondly, there was an intervening fact here. The Obis case came down from this circuit after Mr. Gupta's conviction, but before his appeal. The Obis case made it clear that mere relationship without more was enough for benefit. The timing of that really made it kind of futile, and I go to the most recent case of this court, Gutierrez against Smith, in which a similar situation, this court has found in circumstances there that procedural default shouldn't apply. Gutierrez is about the New York Court of Appeals flip with regard to depraved indifference murder. The change of two people from that court, Judge Levine and myself, radically changed the decision of the New York Court of Appeals within 18 months from 20 years or 40 years consistently under determining depraved indifference murder to fit within the confines of intentional conduct, or potentially intentional conduct, to the new interpretation that was given by Judge Rosenblatt's decision in Sanchez, and that was a sea change in New York law. This is far from a sea change in the law. This was a debated issue and was raised by a number of people, indeed raised by Newman successfully. Apparently, Newman wasn't into futility. Well, I would say two things, Judge Wesley, most respectfully. Newman didn't raise it. The issue was really reached by this court without Newman raising this issue at all. Too bad Gupta could have gotten lucky and had the same benefit. Secondly... It looks like we weren't so entrenched in it, was it? If Judge Parker was more than willing to leap in without even a suggestion from someone else? Well, the government in one filing after another with this court and in their unsuccessful petition for rehearing on bank and their unsuccessful petition for certiorari referred to Newman unprecedented. Sea change in law redefines the issue of personal benefit, et cetera, time after time after time. And indeed, as a result of the Newman case, they had to dismiss any number of cases, including ones where they were pleased of guilty. It's hard to talk to the New York Court of Appeals when I have you on the panel, but I would only say this... I just see, Gutierrez, it may well be, and I see your lights on, but it may well be that Newman broke new ground and the government's doom and gloom with regard to its attempt to turn us around so that they could then petition the Supreme Court, which was denied, is another matter. But Gutierrez is not a good fit for you in my view. Well, Gutierrez, I would say this most respectfully, Judge Wesley, two things. One, it's the most recent word of this court. Secondly... I understand why you have to raise it. I'm just saying to you... Secondly, there was a pre... For a defense lawyer there, there was a dissent by Judge Bellicosa on this very issue. So therefore, a lawyer there would know that there is at least one judge on that court who is sympathetic. I know I'm alone, but might I just deal with the instructional error? Do that now and take up some of your time, or would you rather come back and do it then? I'll do it very quickly now. Very quickly. Look, Judge Rakoff's charge was wrong in at least four respects with respect to Newman. First, he said the benefit could be modest. Newman says it has to be consequential. The... He said the benefit doesn't need to be financial or tangible in nature. That's flatly contrary to Newman, which says it has to be objective and at least potentially, if not actually pecuniary. Thirdly, there was no sense in his instruction of anything being in exchange for or a part of a quid pro quo. Fourthly, he charged in the disjunctive, maintaining a business relationship with a frequent business partner or receiving future financial benefits. So it is clear that the jury and then the government argued in their rebuttal that all you have to do is maintain a relationship. It doesn't have to have any financial component. What do you make of this quote from Newman? And you can tell me when you get back up. It says, personal benefit is broadly defined to include not only pecuniary gain, but also any reputational benefit that will translate into future earnings and the benefit one would obtain for simply making a gift of confidential information to a trading relative or friend. That's a Newman at 452. I would say two things. I don't want to lose all my rebuttal time. You may have it all gone now. I'll give you some rebuttal time. Don't worry about that. First, this case was not tried, argued, or charged on any kind of gift theory. That's the first thing. Secondly, Newman makes it clear it has to be in exchange for personal gain. It is whether the insider will benefit directly or indirectly from his disclosure. Absence of personal gain, there has been no breach of duty. Thank you, Mr. Neftalis. We'll hear from the government. Mr. Williams? Good morning, Your Honors. May it please the Court. My name is John Williams. I represent the government on appeal. I also represented the government in the district court proceedings before Judge Rakoff. Your Honors, Mr. Neftalis made an important concession that this case was not tried on any sort of gift theory. Newman, of course, was a gifting case regarding personal benefit in the context of a friendship. The evidence at trial in this case showed, and the government argued repeatedly, that Gupta tipped Rajaratnam in anticipation of receiving pecuniary benefits. That kind of quid pro quo is not impacted at all by Newman's holding. The government specifically argued that Gupta tipped Rajaratnam in the fall of 2008 with the anticipation and hope that Rajaratnam would help him with his Voyager investment. That is a classic pecuniary benefit. Now, Gupta's claim for post-conviction relief fails at the outset also because Judge Rakoff's instruction before the jury was not erroneous under Newman, specifically by instructing the jury that maintaining a good relationship with a frequent business partner that not at all told the jury that they could convict on the basis of or the existence of a mere friendship, which is what, of course, Newman was concerned with. Why not? What's the difference? What's the difference between a good relationship and a friendship? A good relationship with a frequent business partner, as opposed to a good relationship with a family member or a college friend that is very different than a good relationship in a Gupta and Rajaratnam were specifically motivated by Gupta's financial interests. That was the point of most contention between the parties. The battle was joined over whether or not Gupta had the intent to benefit in the fall of 2008 around the time when his relationship with Rajaratnam became a little contentious because of the Voyager investment. The government said, no matter how upset Gupta was with Rajaratnam, he was incentivized to tip him with confidential information to get his money back by hook or by crook. It turned out that he decided that tipping him with confidential information was the way to do it. We pointed the jury specifically to a July 29, 2008 wiretap call where Gupta discussed confidential information that occurred at the Goldman Sachs board meeting. Then immediately after discussing that confidential information, which Gupta had no right to discuss with Rajaratnam, Rajaratnam and Gupta discussed Gupta's Voyager investment. Judge Rakoff specifically found that that conversation was a powerful window into the men's relationship and that it showed the powerful quid pro quo relationship between the two men. Now, the government went on, including, we opened on the theory that Gupta had an intent to benefit himself, specifically with regard to Voyager. At appendix, at page 46, we said, you will hear Gupta wanted Rajaratnam, the billionaire hedge fund manager, to make him whole, to give him the $10 million that Gupta had lost. In summation, we again return to this exact argument and we said that Gupta clearly believed that helping Rajaratnam by providing benefits and assistance to Rajaratnam made it more likely that Gupta would get his money back and receive other benefits from Rajaratnam. Now, the defense vigorously contested that point before the jury, but again, the government said to the jury that not only did they have the wiretap call, not only did they have testimony from witnesses including Anil Kumar on this point, but they also had Gupta's own words. We said in summation, this is at page 381, that this is discussing Anil Kumar's testimony, that he gave you testimony regarding what happened regarding Voyager and Mr. Gupta's own statements about being upset about it and wanting Rajaratnam to make him whole. That was the motive to tip and why he continued to tip Mr. Rajaratnam. And we went on and said Gupta had been tipping Mr. Rajaratnam in the fall of 2008 about Goldman Sachs and Procter and Gamble. He wanted Rajaratnam to make him whole. So the notion that the government never argued a quid pro quo at trial just doesn't match up with the facts. Of course, we didn't have to use the Latin in order to speak to the jury about what was plain as day, that this was an inherent pecuniary benefit that Mr. Gupta was seeking. Another charge question though. Is the government's position still that the charge in Whitman is not consistent with Newman? Yes, Your Honor, it is. And is it the portion of the Whitman charge that just says, or just maintaining or furthering a friendship? Is that the fatal part to the Whitman charge in your view? Yes, Your Honor. The fact that the charge mentions friendship is the issue with the Whitman charge. Now, of course, the government's position is that that under Newman, there is doubt as to whether or not the jury could have convicted on a basis of mere friendship, could have assumed benefit by the existence of friendship. Now here, the Gupta instruction was substantially different, and it's not until their reply brief that they actually grappled with the key points of departure. Previously, they had simply said a good relationship as the theory. But if you widen the aperture and you look at the entirety of the charge, it is clear that Judge Rakoff was telling the jury that if Gupta tipped Roger Rottenham with the intent to maintain a good relationship with a frequent business partner, that that is sufficient for a personal benefit. Whitman was a different instruction altogether. Does the relationship with a business partner you think that separates it out? Because even though there's an aura there, it indicates some kind of ongoing business-related relationship. Absolutely, Your Honor. And furthermore, the government argued before the jury, we never said that Gupta was gifting confidential information to Mr. Roger Rottenham so that their relationship would stay good. Instead, the government always argued that it was something something. It was a tip for something in return. And that here, by tipping Roger Rottenham with confidential information, Gupta was still expecting something from Roger Rottenham in return. Your Honors, if there are no further questions, the government will rest on its brief. Thank you. Mr. Natales, you've got a couple minutes. First of all, the arguments ably made by my worthy opponent were not the ones that were made at trial, and that's not how the case was tried, as well as the instruction. Indeed, one thing that we've raised in five different briefs that the government never answers, because I guess they don't have any answer, is how the government utilized the instruction by Judge Rakoff, which is in the rebuttal summation at Appendix 380. The assistant U.S. attorney got up and said, you've heard a lot about benefit in the defense summation. Well, the truth is, there wasn't a word about benefit in the defense summation. It was all about lack of motive, why someone, lack of intent, why someone at this stage in life who was a philanthropist, who had never done anything wrong, would actually choose to become a criminal at this point in his life. That's what was argued. Instead, he characterized it and he said, oh, you don't, benefit, all it has to be is something modest. Listen to what Judge Rakoff is going to tell you. It doesn't have, all it has to be is maintaining a good relationship with Roger Rotman. Those are the exact words. His benefit was, quote, about maintaining a good relationship with Roger Rotman. That's in Appendix 380. And Judge Rakoff. But on the next page, he argues that the goal was to have Roger Rotman make him whole. But I say two things. One, he then goes on after Judge Kearse, two things. One, I then object. The judge then says, that objection isn't well taken. What he's saying is accurate in the charge. He then goes on to say, this doesn't have to be financial. It doesn't have to be anything. It doesn't have to be a money. You'll hear that from Judge Rakoff. Period. And that's how they tried the case. Period. That's the way this case was tried. In addition, your Honor, most respectfully, Judge Kearse, the words exchange or quid pro quo means there's two sides to the coin. It's not, we think they were, we think that they're unsuccessful arguments, which are really two lines out of a 110 page summation about he had a motive to curry favor. There was no evidence of any agreement with Roger Rotman that if he gave him this information, he would get something back. There wasn't a word of evidence about that. For a quid pro quo, you need a quid ana quo. Even if we assume, and I think the evidence doesn't support it, that our client had a motive, which is all they argued, that's not enough for a benefit. Indeed, as the quoted language from Newman, relying on Dirks, is there has to be an exchange. It has to be done in exchange for something. It doesn't, it doesn't. An expectation. An expectation isn't enough, most respectfully. There has to be some evidence that this is going to, the fact that somebody may have a hope or an expectation, that isn't enough. Indeed, I most respectfully, that Dirks, as quoted by Newman, says it has to be in exchange for personal gain. And there is, there wasn't an ounce of evidence, or they would have argued it. You know, the interesting thing about this case, unlike every other galleon case, every other galleon case, there were actually quid pro quos. People received cash. They received tips in exchange. There was a classic thing. Every insider trading case, that's why this case was so unique. Every insider trading case of which I was aware, going back to my youth, when the Boesky, Marty Siegel thing, there were people delivering bags of cash from Ivan Boesky in the Plaza Hotel saying, red light, green light. There was none of that there. The flaw that the government had was they had evidence which was found to be sufficient on these two charges. They lost, by the way, they keep on saying it, the other thing, they lost 2007 and 2009. They lost all those counts. Mr. Nautalus, your time has expired. Okay. Thank you, Judge. I hope I tried to answer. Thank you very much, Judge, for giving me a little extra time on the rebuttal. Appreciate it. Thank you. Reserve decision.